UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

EDMOND TIMOTHY WILLIAMS,
                                            Petitioner,

            vs.
                                                            9:03-CV-1054
SUPERINTENDENT ALLARD,                                      (J. Kahn)
Superintendent of  Franklin Correctional Facility
                                            Respondent.

_____

EDMOND TIMOTHY WILLIAMS, Petitioner *Pro Se*
STEVEN H. SCHWARTZ, Assistant Attorney General of the State of New York

GUSTAVE J. DI BIANCO, Magistrate Judge

## REPORT-RECOMMENDATION

This matter has been referred to me for Report and Recommendation by the

Honorable Lawrence E. Kahn, United States District Judge, pursuant to 28 U.S.C. §

636(b) and Local Rules N.D.N.Y. 72.3(c).

Petitioner brings this action for a writ of habeas corpus pursuant to 28 U.S.C. §

2254, challenging a judgment of conviction from the Albany County Supreme Court.

Petitioner was convicted after a jury trial of criminal sale of a controlled substance,

third degree on October 18, 2000.  On December 1, 2000, petitioner was sentenced to

an indeterminate term of nine to eighteen years of incarceration.  The Appellate

Division, Third Department affirmed the conviction on May 15, 2003.  *People v.*

*Williams*, 305 A.D. 2d 802, 759 N.Y.S. 2d 577 (3d Dept. 2003).  The New York

Court of Appeals denied leave to appeal on July 15, 2003.  *People v. Williams*, 100

N.Y. 2d 589, 796 N.E. 2d 492 (2003).

Petitioner raises four grounds in support of his petition.

1. The suppression hearing judge committed reversible error by denying petitioner's pre-trial motion to suppress currency seized from him at the time of his arrest.

2. The trial court judge committed reversible error by denying petitioner's post-trial N.Y. CRIMINAL PROCEDURE LAW § 330.30 motion to set aside the verdict on the basis of newly discovered evidence.

3.  Petitioner was denied effective assistance of counsel at trial because counsel mistakenly conceded a point that was against petitioner's interest.

4.  Petitioner was denied effective assistance of counsel because counsel failed to exercise due diligence in securing the appearance of a witness at trial.

Respondent has filed an answer (Dkt. No. 8), a memorandum of law (Dkt. No.

9), and the pertinent state court records.[1]  For the following reasons, this court will

recommend denial of the petition.

## DISCUSSION

**1.**   **Facts**

On August 12, 1999, Detectives Guiry and Gavigan, of the Albany Police

Department, were conducting surveillance of a "hot" intersection from a parked van.

The detectives saw petitioner standing near a wall and observed a man on a bicycle

---

[1]The state court records are listed on page 2 of respondent's Answer.  (Dkt. No. 8).

ride up to petitioner.  (Suppression Hearing Transcript ("S.T.")[2], 7; Trial Transcript ("T.")[3], 125-126).  The surveillance van was equipped with a periscope-like device that extended a few inches above the roof of the van, allowing Detective Guiry to observe activities outside of the van through a "mirrored prism."[4]  (S.T. 17-18; T. 120).  Through this device, Detective Guiry observed the man on the bicycle hand money to petitioner.  (S.T. 7).  Petitioner then handed the man on the bicycle a plastic bag containing other small, thin bags.  (S.T. 7, 9; T. 125-126).  Detective Gavigan watched the incident with his binoculars, looking through the windshield of the van. (T.  225-27).

The detectives believed that they had witnessed a drug transaction, and arranged for patrol units to pick up both suspects.  (S.T. 8, 9, 11; T. 128-130, 227-28).  Detective Guiry testified at the Suppression Hearing that he saw the transaction clearly because he was only twenty to twenty-five feet away, and the buyer rode his bicycle "right past" the van so that he was only approximately six feet away from the surveillance vehicle.  (S.T. 10-11).  The detectives were able to maintain visual

---

[2]The Suppression Hearing Transcript ("S.T.") is included in the State court records.  It also comprises Volume II of the Record on Appeal submitted to the Appellate Division, Third Department.  The page numbers are the same in both copies.

[3]The Trial Transcript ("T.") is included in the State court records.  It also comprises Volumes IV, V, and VI of the Record on Appeal submitted to the Appellate Division, Third Department.  The page numbers are the same in both copies.

[4]The surveillance van was apparently also equipped with videotaping equipment, but that equipment was not used during this particular surveillance assignment.  (T. 146, 235)

surveillance of both individuals until their arrests.  (S.T. 11-12; T. 128-130, 228-29).

When the patrol officer responded to the detectives' call, he found the man on the bicycle talking to someone in a van.  (T. 171-72).  The individual in the van was released after answering a few questions.  (T. 172).  The man on the bicycle, Keith Stevens, was detained and searched.  (T. 171-72).  During the search, the patrol officer found a plastic bag in Stevens's back pocket that appeared to contain heroin. (T. 172).  The plastic bag contained seven smaller packets of a white substance tied together with a rubber band.  (T. 173).  One packet filled with a white substance was loose in Stevens's pocket. (T. 173).  The white substance was tested by a forensic scientist at the New York State Police Forensic Investigation Laboratory, and was determined to be heroin.[5]  (T. 283-93).  The actual drugs seized from Stevens were received into evidence and viewed by the jury at trial.  (T. 167, 173, 298).

Another patrol officer arrested petitioner within minutes of Stevens's arrest. (T. 215).  Petitioner was searched, and $ 205.00 was found in one of his pockets.  (T. 132).  Detective Guiry testified at trial that he "inventoried" the property found on petitioner, and that the property included $ 205.00.  (T. 132).  Detective Guiry also testified that heroin decks[6] cost $ 20.00 to $ 25.00 each , but usually sell for $ 25.00. (T.  131).  The prosecution did not introduce the actual currency seized from

---

[5]The tests took place in January 2000.

[6]The smaller packets are referred to as "decks."  (T. 174).

petitioner, but instead used a form called a "property receipt" filled out by Detective Guiry to show the amount of money seized from petitioner.  (T. 132-142).[7]

Petitioner was charged by indictment with one count of Criminal Sale of a Controlled Substance, Third Degree.  *People v. Williams*, Indictment, Feb. 1, 2000. Petitioner moved to suppress the currency that was seized at the time of his arrest. (S.T. 2).  A Suppression Hearing was held in August of 2000, and the court denied the motion in October of 2000.  (S.T. *in toto*; *People v. Williams*, Decision and Order, Oct. 2, 2000).  The Albany County Court found that probable cause to arrest petitioner was established when the patrol officer who arrested Stevens confirmed that Stevens was carrying the package that the detectives saw petitioner hand to Stevens, and that the substance in the package appeared to be heroin.  *People v. Williams*, Decision and Order, Oct. 2, 2000, p. 3.  The court found the arrest valid, and denied the suppression motion.  *Id*.

The trial occurred in October of 2000.  After the prosecution rested its case, defense counsel advised the court that he was attempting to locate a witness.  (T. 301).  Defense counsel suggested to the judge that the jury be dismissed for the day, "and if I can't find him tonight, then I'm going to have to proceed without him."  (T. 301).  Defense counsel then asked for the prosecution's help in determining whether

---

[7]The currency was initially placed in an evidence locker, but then was deposited into a fund administered by the Albany Police Department.  (T. 143, 163-64, 271).  The currency was not maintained as evidence by the bank, and the police department was unable to retrieve the actual bills that were deposited.  (T. 275).

the missing witness was currently incarcerated in Albany.  (T. 303).  The Assistant

District Attorney stated: "If you're looking for Mr. Stevens, he's not in the Albany

County jail."  *Id*.  Counsel did not locate Mr. Stevens, and petitioner did not testify.

Defense counsel did not call any witnesses.  (T. 323-24).

At the charge conference, immediately following the conclusion of testimony,

defense counsel requested that the jury be given a "missing witness charge"

regarding Stevens.  (T. 326).  The request was denied because Stevens was not in the

prosecution's control.  (T. 331).  Defense counsel's objection was preserved on the

record after the judge gave the jury charge.  (T. 418).

Petitioner was convicted on October 18, 2000.  (T. 435).  Sentencing was

originally scheduled for November 17, 2000.  (Sentencing Hearing Transcript ("Sent.

T.")[8] at 5).  Prior to that date, defense counsel requested an adjournment because

counsel was informed by petitioner's family that Stevens had returned to the Albany

area.  (Sent. T. 5).  The court granted defense counsel's request and rescheduled the

sentencing hearing to December 1, 2000 so that defense counsel could make

motions.  (Sent. T. 2).

Petitioner submitted a *pro se* letter in lieu of Defendant's Pre-Sentence

---

[8]The Sentencing Hearing Transcript ("Sent. T.") is in the State court records.  It also
comprises Volume VIII of the Record on Appeal submitted to the Appellate Division, Third
Department.  The page numbers are the same in both copies.

Memorandum  pursuant to § 390.40 of the Criminal Procedure Law.[9]  (State Record on Appeal ("R.A."), Volume I, 21a).  In his *pro se* letter dated November 13, 2000, petitioner argued that the prosecution had not met its burden of proof, and stated that Stevens gave two affidavits stating that petitioner did not sell Stevens the drugs that were found on Stevens' person on August 12, 1999.  (R.A., Vol. I, 25a).  Attached to petitioner's *pro se* request was an affidavit signed by Stevens dated July 18, 2007. (R.A., Vol. I, 28a).

On December 1, 2000, the date of sentencing, defense counsel made an oral motion to set aside the verdict pursuant to Criminal Procedure Law § 300.30 (3). (Sent. T. 3).  Counsel stated that Stevens visited counsel's office twice in November. (Sent. T. 6).  Defense counsel obtained an affidavit from Keith Stevens, dated November 21, 2000 and submitted it to the court.  In the affidavit, Stevens stated "[t]hat the drugs I had in my possession were [sic] at the time of my arrest were not purchased from Timothy Williams ..."  (Sent. T. 5; Affidavit, R.A., Vol. I, 29a-30a, ¶ 6).

Although defense counsel conceded that Stevens's affidavits were not

---

[9]Petitioner refers to this document as a submission "in lieu of" a pre-sentence memorandum.  Under N.Y. CRIM. PROC. LAW § 390.40, either the defendant or the prosecutor may submit a pre-sentence memorandum "setting forth any information that is pertinent to sentencing.  N.Y. CRIM. PROC. LAW § 390.40 (2007).  In his submission, petitioner did not specify the basis for his letter, but during the state appeals, petitioner's counsel characterized this document as a "pro se motion to set aside verdict."  (Appellant's Brief and Appendix (included in state court records), i).

"technically" new evidence, he asked the court to consider them.  (Sent. T. 3).

Defense counsel argued that he had intended to call Stevens at trial, but believed that

he could not be located.  *Id*.  Counsel stated that the petitioner's *pro se* motion

contained a June[10] affidavit taken while Stevens was incarcerated at Albany County

Jail.  (Sent. T. 4).  The July 18, 2000 sworn statement specifically states that Keith

Stevens did not purchase drugs from petitioner.  *Id*.  Counsel then stated that after

Stevens was released from the Albany County Jail, Stevens went to counsel's office.

Counsel was not there, but Stevens "gave a sworn statement to the effect that Mr.

Williams was being prosecuted for drugs that he [Stevens] had, in fact, possessed."

(Sent. T. 4).  However, counsel stated, "when I reviewed the statement, I found it

lacking, because it didn't specifically state he [Stevens] did not get the drugs from

Timothy Williams."  *Id*.  Counsel argued that he later attempted to locate Stevens to

testify at petitioner's trial, but Stevens could not be found. (Sent. T. 4).  After the

trial, counsel was informed that Stevens had returned to Albany.  (Sent. T. 5).

Stevens went to counsel's office and gave the November 21, 2000 statement that was

submitted to the court with counsel's § 330.30 motion.  *Id*.

      Counsel argued that Stevens's testimony would have resulted in a different

---

[10]Defense counsel referred the court to the affidavit attached to petitioner's letter to the court, but was apparently incorrect as to the date on which the affidavit was sworn.  The notary public dated the affidavit on July 18, 2000.  The July affidavit, which was attached to petitioner's letter to the trial court judge, is included in the Record on Appeal, Volume I, 28a.  No June affidavit is present in the state court records.

outcome.  (Sent. T. 6).  Counsel argued that Stevens's testimony was "very important" (Sent. T. 7), and that the jury could have viewed Stevens's testimony favorably to petitioner (Sent. T. 6).

The court denied the motion to set aside the verdict, finding first that the information obtained from Stevens was not "newly discovered" and that counsel should have subpoenaed Stevens (Sent. T. 9-11).  Petitioner was sentenced on the same day to an indeterminate term of incarceration of nine to eighteen years.  (Sent. T. 15-16).

**2.   <u>Suppression of Currency</u>**

Petitioner's first claim is that the currency seized at the time of petitioner's arrest was seized unlawfully.  Petitioner argues that "[t]he lower court committed reversible error by denying your petitioner's pre-trial motion to suppress currency seized at arrest."  (Petition, Dkt. 1, 5, ¶ 12b).  It has been well-settled since *Stone v. Powell* that where the state affords a defendant "an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced . . . [against him]."  *Stone v. Powell*, 428 U.S. 465, 482 (1976).

Fourth Amendment claims in habeas petitions are reviewed only under certain circumstances: "(a) if the state has provided no corrective procedures at all to redress

9

the alleged Fourth Amendment violations; or (b) if the state has provided a corrective

mechanism, but the defendant was precluded from using that mechanism because of

an unconscionable breakdown in the underlying process." *Capellan v. Riley*, 975

F.2d 67, 70 (2d Cir. 1992) (citing *Gates v. Henderson*, 568 F.2d 830, 840 (2d Cir.

1977)).  "[T]he 'federal courts have approved New York's procedure for litigating

Fourth Amendment claims . . . as being facially adequate." *Capellan*, 975 F.2d at 70,

n. 1 (quoting *Holmes v. Scully*, 706 F. Supp. 195, 201 (E.D.N.Y. 1989) (citing *Gates*

*v. Henderson*, 568 F.2d 830, 837 & n.4 (2d Cir. 1977) and *Shaw v. Scully*, 654 F.

Supp. 859, 864 (S.D.N.Y. 1987))).

In this case, petitioner fully availed himself of New York's procedure:  first,

when his defense counsel made the motion to suppress, then by counsel's aggressive

cross examination of one of the detectives during the Suppression Hearing.  Even

after the motion to suppress was denied, petitioner's counsel raised the issue at trial,

during the cross examination of the detectives in the surveillance van and the

arresting patrol officers.

Petitioner raised the suppression issue in the Appellate Division and the Court

of Appeals.  Petitioner claims in this case, that the descriptions of the "seller" by the

detectives to the arresting patrol officers were not sufficient to identify him as having

participated in the sale.  (Petition, Dkt. No. 1, 5, ¶ 12a).  The Appellate Division

explicitly rejected this argument under the "fellow officer rule" because the

detectives in the van "directed the arrest of defendant and observed that arrest from a

short distance away." *People v. Williams*, 305 A.D.2d 802, 803, 759 N.Y.S.2d 577,

579 (3d Dept. 2003).  The Court of Appeals then denied petitioner's motion for leave

to appeal. *People v. Williams*, 100 N.Y.2d 589, 796 N.E.2d 492 (2003).  Petitioner

does not, nor can he allege any "unconscionable breakdown" in the state's

procedures, except to say that the issue was decided incorrectly.  Petitioner litigated

the Fourth Amendment issue during his prosecution by the state, and raised the issue

during his state court appeal.  To the extent that petitioner challenges the admission

of his confession as a violation of his Fourth Amendment rights, petitioner's claim

may be dismissed based on *Stone v. Powell*.

## 3.    <u>Scope of Review</u>

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), claims

adjudicated on the merits in state court will stand

> unless the adjudication . . . (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United States; or (2)
> resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court
> proceeding.

28 U.S.C. 2254 (d) (2007).  The Second Circuit describes this as a deferential review,

and states that

> the necessary predicate to this deferential review is, of course, that
> petitioner's federal claim has been adjudicated on the merits by the state
> court.  If a state court has not adjudicated the claim on the merits, we

> apply the pre-AEDPA standards, and review *de novo* the state court
> disposition of the petitioner's federal constitutional claims.

*Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003) (quoting *Aparicio v. Artuz*, 269 F.3d 78, 93 (2d Cir. 2001).

"[A] state court adjudicates a petitioner's federal constitutional claims on the merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (internal citations omitted). In order to determine whether a state court has disposed of a claim on the merits, the following factors are considered: "(1) what the state courts have done in similar cases; (2) whether the history of the case suggests that the state court was aware of any ground for not adjudicating the case on the merits; and (3) whether the state court's opinion suggests reliance upon procedural grounds rather than a determination on the merits." *Aparicio*, 269 F.3d at 93 (quoting *Sellan v. Kuhlman*, 261 F.3d 303, 314 (2d Cir. 2001)).

A state decision is "contrary to clearly established Federal law if it 'contradicts the governing law' or 'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from the Supreme Court." *Ramirez v. Miller*, 2005 U.S. Dist. LEXIS 4306, *10 (S.D.N.Y. 2005) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). The "contrary to" standard requires not just an incorrect application of the law, but an *unreasonable* application. *Id.* "Objective unreasonableness includes an

12

unreasonable refusal 'to extend a clearly established, Supreme Court defined, legal principle to situations which that principle should have, in reason, governed." *Id*., (quoting *Kennaugh v. Miller*, 289 F.3d 36, 45 and n.2 (2d Cir. 2002)).  Pursuant to 28 U.S.C. § 2254 (e)(1), "a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. 2254 (e)(1) (2007).  *See Sorto v. Herbert*, 2004 WL 2852358, at *2 (E.D.N.Y. 2004).  The Supreme Court held that "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." *Schriro v. Landrigan*, __ U.S. __, 127 S.Ct. 1933, 167 L. Ed. 2d 836 (May 14, 2007).

## 4.   <u>Newly Discovered Evidence</u>

Petitioner's second claim is that the trial court committed reversible error because it failed to consider "newly discovered evidence" consisting of an affidavit from Stevens stating that he bought the drugs from someone other than petitioner.  In this case, the Appellate Division is the highest court that last examined the facts of the case and the merits of petitioner's claims.  The Appellate Division explicitly rejected petitioner's newly discovered evidence claim.  The Appellate Division held that,

> . . . .  Defendant's motion was premised on his assertion that an affidavit
> from the alleged purchaser of the drugs constituted newly discovered

evidence. . . .  These assertions, however, could have been discovered prior to trial through the exercise of due diligence when the potential witness appeared in defense counsel's office and indicated that he would give exculpatory testimony. . . .  Accordingly, this evidence cannot be considered "newly discovered" within the meaning of CPL 330.30 (3).

*People v. Williams*, 305 A.D.2d 802, 803, 759 N.Y.S.2d 577, 579 (3d Dept. 2003).[11]

Thus, the Appellate Division decided the newly discovered evidence claim on the merits and the AEDPA standard applies.

The Supreme Court standard for determining whether newly discovered evidence should be considered is outlined in *Herrera v. Collins*.  *Herrera v. Collins*, 506 U.S. 390 (1993).  In that case, the Supreme Court held that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera*, 506 U.S. at 400.  The *Herrera* Court stated that "newly discovered evidence" was

---

[11]The Appellate Division relied on three cases in analyzing this claim: one Court of Appeals decision, and Appellate Division decisions from the First and Second Departments.  *Id*.  The Court of Appeals case, *People v. Penoyer*, affirmed an Appellate Division decision that defined "newly discovered evidence," and included the requirement that the evidence "must not have been discoverable before trial by the exercise of due diligence."  *People v. Penoyer*, 72 N.Y.2d 936, 937, 532 N.Y.S.2d 843 (1988), aff'g 135 A.D.2d 42, 523 N.Y.S.2d 672 (3d Dept. 1988).  The First Department similarly declined to find that newly discovered evidence existed where "[t]he witness in question could have been located by defendant prior to trial through due diligence . . . [and where] there was no showing that his testimony would have probably affected the outcome of the trial . . ."  *People v. Lewis*, 284 A.D.2d 172, 173, 728 N.Y.S.2d 431 (1st Dept. 2001), lv denied 97 N.Y.2d 706, 765 N.E.2d 310 (2002).  The Second Department also refused to consider testimony from two witnesses who were discoverable before trial.  *People v. Copeland*, 185 A.D.2d 280, 585 N.Y.S.2d 794 (2d Dept. 1992), lv dismissed 80 N.Y.2d 902, 602 N.E.2d 235 (1992).

> evidence which could not reasonably have been presented to the state
> trier of facts. . . Of course, such evidence must bear upon the
> constitutionality of the applicant's detention; the existence merely of
> newly discovered evidence relevant to the guilt of a state prisoner is not
> a ground for relief on federal habeas corpus.

*Id*. (quoting *Townsend v. Sain*, 372 U.S. 293, 317 (1963)).

The Appellate Division's decision in petitioner's case is completely consistent with the well-established Supreme Court precedent.

Defense counsel stated at the Sentencing Hearing that petitioner had a conversation with Stevens while both men were incarcerated at the Albany County Jail.  (Sent. T. 3).  According to defense counsel, petitioner informed Stevens that petitioner "was being charged with selling the drugs that Keith Stevens had in his possession."  (*Id*. at 3-4).  Defense counsel also admitted that Stevens visited counsel's office, and that Stevens made a statement related to the drugs found on his person.  (*Id*. at 4).  While it is unclear when petitioner or his counsel became aware of the July 2000 affidavit signed by Stevens, both counsel and petitioner were aware of conversations with Stevens prior to trial relating to the source of the drugs found on Stevens's person at the time of his August 1999 arrest.

Evidence related to an alternative source of the drugs could have been presented at trial because both petitioner and his counsel were aware that the source of the drugs may have been in dispute.  That the November affidavit was not obtained until sentencing does not bear on whether Stevens's contention that the drugs came

from another seller is "newly discovered evidence."  Furthermore, petitioner does not

allege a constitutional violation independent of his newly discovered evidence claim

in this portion of his federal habeas claim.  Thus, the Appellate Division's decision

was not contrary to, nor did it involve an unreasonable application of well-established

Supreme Court precedent.

## 4.    **Ineffective Assistance of Counsel**

Petitioner's third and fourth claims allege that petitioner's trial attorney

rendered ineffective assistance of counsel in violation of the Sixth Amendment, both

by undermining petitioner's *pro se* post-trial newly discovered evidence claim, and by

failing to exercise due diligence in securing Stevens's appearance at trial.  While

petitioner characterizes these as separate claims, both claims involve Keith Stevens,

who was convicted of possessing heroin after his arrest in the alleged drug transaction

on August 12, 1999.  As discussed above, petitioner's "newly discovered evidence"

that formed the basis for his post-trial claims was a statement from Stevens that

petitioner did not sell the heroin that was found on Stevens's person.  Stevens is also

the witness whose presence trial counsel failed to secure.  Stevens would have been

the defense's only witness.  With respect to the ineffective assistance of counsel

claims, the Appellate Division held,

> . . . .  Contrary to defendant's contention, defense counsel did not err in
> correctly acknowledging before Supreme Court that the witness's
> testimony was not new evidence given that the record demonstrates that
> defense counsel intended to call the witness at trial.  In addition, while

16

> defense counsel should have subpoenaed the witness to assure his
> availability at trial, defendant fails to demonstrate that he was prejudiced
> by the witness's absence.

*Williams*, 305 A.D.2d at 803-04, 759 N.Y.S.2d at 579.  The Appellate Division

explicitly resolved petitioner's ineffective assistance of counsel claims on the merits

when it found that petitioner "did not receive ineffective assistance of counsel."

*Williams*, 305 A.D.2d at 804.

The court must next determine whether the Appellate Division decided the two

claims contrary to, or unreasonably applied Supreme Court precedent.  The Supreme

Court standard for determining whether a petitioner's attorney was ineffective is

articulated in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland* requires a

two-part test: (1) petitioner must show that "counsel's performance was deficient. . . .

that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment," and (2) petitioner "must show

that the deficient performance prejudiced the defense."  *Strickland*, 466 U.S. at 687.

"When a convicted defendant complains of the ineffectiveness of counsel's

assistance, the defendant must show that counsel's representation fell below an

objective standard of reasonableness."  *Id*. at 687-88.  Moreover, the Supreme Court

held that "a court must indulge a strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance; that is, the defendant

must overcome the presumption that, under the circumstances, the challenged action

'might be considered sound trial strategy.'" *Id*. at 689-90.

### A.  Undermining Petitioner's Claim

As discussed above, petitioner's newly discovered evidence claim fails because petitioner's evidence was discoverable before trial.  There was no newly discovered evidence.  Counsel's statements to the court that the basis for his C.P.L. § 330.30 motion was not "technically . . . in regard to new evidence. . ." and that "this is not specifically new evidence" were truthful and correct.  He was truthful as to how the information included in Stevens' statement came to light.  Counsel was, in fact, correct that Stevens' contention was not "newly discovered evidence," but he ***still presented a legal basis for the argument that the November affidavit should be considered*** by the court before sentencing.

The Appellate Division's decision was not contrary to, or an unreasonable application of, existing Supreme Court precedent.  To the extent that petitioner's ineffective assistance of counsel claim is based on the allegation that defense counsel undermined petitioner's newly discovered evidence claim, the claim may be dismissed.

### B.  Failing to Secure a Witness's Presence at Trial

Petitioner alleges that he received ineffective assistance of counsel when his trial counsel failed to secure Keith Stevens's presence at trial.  Petitioner submitted two affidavits that state that Stevens would have testified that the drugs found on

Stevens' person at the time of his arrest came from someone other than petitioner. (R.A., Vol. I, 28a and 29a-30a).  As discussed above, petitioner and counsel were both aware that Stevens was the "other" individual in the alleged drug transaction, and before trial, both knew that he may have been able to provide exculpatory testimony.  However, based on Stevens' visit to counsel's office before trial, counsel did not find Stevens' statement to be reliable "because it didn't specifically state he did not get the drugs from Timothy Williams."  (Sent. T. 4).

The Appellate Division found that "defense counsel should have subpoenaed the witness to assure his availability at trial."  *Williams*, 305 A.D.2d at 803-04.  The Appellate Division did not specifically comment as to whether defense counsel was deficient, but found that counsel failed to perform a particular task.  Instead, the Appellate Division focused on the second requirement of *Strickland*, and examined whether petitioner was prejudiced by counsel's performance.  The Appellate Division found that "defendant fails to demonstrate that he was prejudiced by the witness's absence," rejecting petitioner's contention that "there was enough of a probability of a more favorable verdict had Stevens testified to establish that any lack of due diligence on counsel's part prejudiced [petitioner]."  *Id*.; Appellant's Brief, 13.

This court will also focus on the second "prong" of *Strickland*.  The Second Circuit has held that

> [a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error

19

had no effect on the judgment.  To merit habeas relief, the defendant
must show that the deficient performance prejudiced the defense.  The
level of prejudice the defendant need demonstrate lies between prejudice
that had some conceivable effect and prejudice that more likely than not
altered the outcome in the case.  Thus the defendant must show that there
is a reasonable probability that, but for counsel's unprofessional errors,
the result of the proceeding would have been different.  The Court
defined reasonable probability as one that undermines confidence in the
outcome.

*Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001) (alterations in original, internal

quotation marks and citations omitted), *quoted in Lynn v. Bliden*, 443 F.3d 238, 247

(2d Cir. 2006).

Petitioner's appellate counsel argued that "there was enough of a probability of

a more favorable outcome."  Appellant's Brief at 13.  Petitioner does not explain what

prejudice he suffered in his petition.  (Petition, Dkt. No. 1).  While he may have been

able to provide potentially exculpatory testimony, Stevens would have had to admit to

his recent conviction for his part in the alleged drug transaction.  As noted in

Respondent's Memorandum of Law, the jury considered eyewitness testimony and

physical evidence (Dkt. No. 9, 6).  Whether or not Stevens's potential testimony

would have made a difference to the jury is unclear.  Stevens's potential testimony

could have had "some conceivable effect," but the court does not find a reasonable

probability that the result of the trial would have been different given the strong and

detailed evidence that was presented by the prosecution.  To the extent that

petitioner's ineffective assistance of counsel claim is based on counsel's failure to

subpoena Stevens to testify at trial, the claim may be dismissed.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**.

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have ten

days within which to file written objections to the foregoing report. Such objections

shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS**

**REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health*

*and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R.

Civ. P. 6(a), 6(e), 72.

Dated: August 10, 2007

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge